ELIZA G. HAMLIN, and another, *vs.* CHARLES P. TREAT.

Piscataquis.    Opinion March 15, 1895.

*Exceptions.    Charge to Jury.    Expression of opinion.    R. S., c. 82, § 83.*

A bill of exceptions. comprising five printed pages, and embracing more than one-half the entire charge of the presiding justice, is irregular, and will not be sanctioned by this court.

Nor is it any infringement of the statute (R. S., c. 82, § 83) which prohibits the expression of opinion by the presiding justice upon issues of fact, because he calls the attention of the jury to the different positions and contentions of the parties.

It is proper for him to state, analyze, compare and explain the evidence in a case.

ON EXCEPTIONS.

This was an action of assumpsit upon account annexed to recover $890.60, alleged to be the aggregate of certain bills for boarding certain railroad men, and certain supplies delivered the same men, while boarding and working upon the railroad.

The plaintiffs claimed that the defendant came to the tent or camp of the plaintiffs and made there with the plaintiffs an ex-press contract that the plaintiffs should furnish board and supplies to men working for certain contractors, called Tucker Brothers, and keep certain accounts or records of said board and supplies, and he, the defendant, would pay the amount so furnished. The defendant denied the contract. The plea was the general issue and a brief statement, pleading the statute of frauds. The verdict was for the plaintiffs for the full amount claimed.

The presiding justice, beside other instructions to the jury, gave instructions and rulings, which the defendant claims were expressions of opinion.

The view taken by the law court renders a full report of the exceptions unnecessary. A few sentences are, however, subjoined.

"Now, both sides rely upon circumstances which, they contend corroborate the positions respectively taken by the one side and the other."

"The plaintiffs say : 'There are certain circumstances that corroborate us, leading you to believe that our main statements are true.' On the other hand, the defendants say that the cir-cumstances must show you that the main statements are not true. I shall not go minutely into these specifications, but shall allude to several salient things most relied upon, and I will reverse the order. I will speak of the contentions of the defense first, as perhaps coming in more naturally in the argumentation.

"The defense contends, in the first place, that the idea of such a bargain as the plaintiffs claim and rely upon is inconsistent with the situation of the parties, and the situation of things at the time when it was alleged that this contract was verbally entered into. It is contended by the defense that these plain-tiffs when they went upon the ground, when they arranged for

their structures and conveniences for boarding-house keeping, had no knowledge that the defendant was coming there upon the ground; that they were there not communicating with him in the first place, but with the sub-contractors under the defendant, the Tucker Brothers; and that the plaintiffs went there with the idea of boarding men for the Tucker Brothers, who were to have a contract with the defendant, entertained for a time even before the contract was signed.

"And the defense thinks there is more force in this thing from the fact that the plaintiffs were related to one of the sub-contractors, and that the plaintiffs must have gone there with different expectations than to secure a contract with the defendant, or to attempt to hold him for these bills.

" In answer to that, the position of the plaintiffs is,—if not by themselves so said, by their counsel argued,—that they went there under general expectations, under hope of expectations, under some uncertainties, seeking to make the uncertainties certain, and when the defendant appeared there they struck a contract with him in clear terms; and, though there could be no question from that time onward under that promise and contract, there might be a question as to how far the defendant would be liable for bills, already made, for credits already given, for boarding already had. But it does not occur on this bill, because that would be applicable to July and this bill is only for August. Still the condition of things there and the situation of the parties are serviceable, as to the conduct and situation of the parties, in what you believe finally occurred and took place.

" Now, the defense says it is unnatural and inconsistent, in the condition of things, to believe that this alleged contract was made. That is, that the position of things there is an argument against it, and the plaintiffs argued that it is not, and that if there is any force in that fact, it is fully overpowered by the strong testimony of the witnesses on the direct question of the contract between the parties. The plaintiffs rely upon the fact that the defendant through his paymaster and private clerk or secretary, paid the July bill or bills to the plaintiffs, arguing that you may infer that if they were to pay or even did pay

the July bills, that they were to pay and should pay the August bills. But the defense turns the same circumstances, as they contend, to their account even more strongly than the plaintiffs assert it in their behalf, in this way. They say : 'We paid the bills to you,—the July bills,—but we paid it on an order or orders from the Tucker Brothers. We did not pay it to you because we owed it to you, but we paid it because the Tucker Brothers, for whom you were really boarding these men, upon written orders requested us to do so,' the defendant presenting two orders with her indorsements being on the back of the instruments then in the possession of the defendant, who filed them away. Now, the defense says : 'You can see by this the logical meaning of this transaction, that these women were supplying this board to the men for the Tucker Brothers, expecting the Tucker Brothers to pay ; giving the credit to the Tucker Brothers, but with the hope of, and expecting to get their pay from us in our paying the Tucker Brothers.' But the plaintiffs, on the other hand, contend that that was a mere piece of machinery got up by the defendants themselves, to keep satisfactory records of the transaction between the defendant and the Tucker Brothers, and that it cannot be regarded as an admission or confession on the part of the plaintiffs in the direction as contended by the defense. In furtherance of that view, they rely upon the evidence of the witnesses, that there was really a receipt taken directly to the defendant from these plaintiffs. The defendant knows nothing about it, and the other witness, his paymaster, says he knew nothing about it and he took no such receipt ; but, the plaintiff says he did, and counsel for the plaintiff relies upon the evidence about it and contends that the circumstance does not amount to much, and whatever it amounts to, it has not force enough to stand up against the direct evidence in the case.

"Now, the defense, in their arguments to you, contend that the defendant had no motive to make this contract with the plaintiffs ; that there was no purpose and object in his doing so ; that there was no reason why he should do so, because his contract was with his sub-contractors. He was to pay them so much money for so much work and it would not be material to him

and it would not be reasonable to expect him to make any promise to pay the bills contracted by such sub-contractors. Give that such force as it strikes upon your minds." . . .

*Henry Hudson*, for plaintiffs.

*M. W. McIntosh and Ira G. Hersey*, for defendant.

Counsel cited: R. S., c. 82, § 83 ; *Clough* v. *Whitcomb*, 105 Mass. 482 ; *Dodge* v. *Emerson*, 131 Mass. 467.

The only question properly to be submitted to the jury was the question whether or not there was an original promise and undertaking on the part of the defendant to pay the claim of the plaintiffs.

If the jury found that there was not an original promise on the part of the defendant, that would be the end of the plaintiffs' case, and the jury should have been so instructed.

If the jury found that there was an original promise, then the defendant must pay the plaintiffs and that sum so paid could not be recovered from the Tucker Brothers, as it would not be an indebtedness growing out of the contract. Tucker Brothers not being liable for the board and supply bill, the defendant, Treat, could not make the Tucker Brothers pay the bill to him if he paid the bill to the plaintiffs, and the jury should have been so instructed.

Tucker Brothers were sub-contractors of the defendant and not defendant's agents. The defendant under his contract with Tucker Brothers never undertook to pay the entire labor bill or any part of it; his contract with Tucker Brothers was to pay them a certain sum of money for certain work performed and not a single laborer could maintain an action for his labor against the defendant.

Neither under any other right did defendant undertake to pay the labor of the men hired by Tucker Brothers, and there is no evidence in the case that he so made himself liable at any time.

By paying the claim of the plaintiffs without an order from Tucker Brothers the defendant would not have less to pay Tucker Brothers, as Tucker Brothers were not liable for the board of the men ; and they being not liable the defendant could

not recover the amount paid plaintiffs from Tucker Brothers, as it was not an indebtedness growing out of contract.

The jury must have understood from the rulings, instructions and opinions of the presiding judge as set forth in the bill of exceptions, that the defendant was liable to pay the wages of the men ; that he had undertaken to pay the entire labor bill ; that by paying the claim of the plaintiffs he would be paying his own indebtedness ; that he had received the benefit of all the labor, of all the board and supplies furnished by the plaintiffs and that having had the benefit, he should pay. Such instructions, rulings and opinions were a wrong to the defendant.

SITTING : EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

FOSTER, J.   The defendant presents a general bill of exceptions, comprising five printed pages, and embracing more than one half the entire charge, and claims that there was an expression of opinion by the presiding justice upon issues of fact in violation of R. S., c. 82, § 83.

This is the only point raised by the exceptions.

It is unnecessary to say that this method of spreading out a whole charge, or even to the extent as disclosed in this case, is not countenanced by the court, and were we to consider the exceptions in reference to this mode of practice they would fall within that class of cases which characterize such a bill of exceptions as irregular.   *Harriman* v. *Sanger*, 67 Maine, 442, 445 ;  *Webber* v. *Dunn*, 71 Maine, 331, 339 ;  *Mackintosh* v. *Bartlett*, 67 Maine, 130 ;  *McKown* v. *Powers*, 86 Maine, 291.

But passing over the irregularity of the exceptions, there is nothing contained in the charge of the presiding justice that infringes upon the statute in question.   The justice called the attention of the jury to the different positions and contentions of the parties, as it was his duty to do ; but that he expressed, or even intimated, any opinion in relation to the facts or issues involved, has no foundation in fact.   He might properly state, analyze, compare and explain the evidence, and there is nothing

which shows that he did more than that. This court in recent decisions has had occasion to define the limits of the official power and duty of the judge presiding in calling the attention of the jury to the evidence before them, and in analyzing, comparing and explaining it. *State* v. *Day*, 79 Maine, 120, 124; *York* v. *Maine Central Railroad Co.* 84 Maine, 117, 128.

*Exceptions overruled.*